UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
PHYTO TECH CORP. d/b/a BLUE CALIFORNIA,

                    Plaintiff,             Civil Action No.
                                                1:19-cv-09033-JGK

v.

GIVAUDAN SA,

                    Defendant.
-----------------------------------------------------------------

## LIQUIDATING TRUSTEE'S FINAL REPORT AND MOTION FOR APPROVAL OF THE TRUSTEE'S PROPOSED WIND UP AND DISSOLUTION OF BGN TECH, LLC

Andrew De Camara, not individually, but solely in his capacity as the Court-appointed liquidating trustee (the "Trustee") of BGN Tech LLC ("BGN" or the "LLC"), pursuant to the *Order Regarding Appointment of Liquidating Trustee* [Dkt. No. 44] (the "Appointment Order") entered by this Court on January 28, 2020, hereby submits this *Final Report* (the "Final Report") and *Motion for Approval of the Trustee's Proposed Wind Up and Dissolution of BGN, LLC* (this "Motion") to update the Court regarding the status of the wind up of BGN, and to seek an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), approving the Trustee's proposed wind up and dissolution of BGN pursuant to 6 Del. C. §§ 18-803 and 805 and Article XIII of the Limited Liability Company Agreement of BGN (as amended, supplemented, restated, or otherwise modified from time to time, the "LLC Agreement"). In support of this Final Report and Motion, the Trustee respectfully states as follows:[1]

---

[1] In further support of this Motion, the Trustee submits the *Affidavit of Andrew De Camara in Support of Liquidating Trustee's Final Report and Motion for Approval of the Trustee's Proposed Wind Up and Dissolution of BGN Tech, LLC* (the "De Camara Affidavit"), a copy of which is attached hereto as **Exhibit A**.

US_153868003v5

**Background**

1.  On September 27, 2019, Phyto Tech Corp. d/b/a Blue California ("Blue Cal") filed the above-captioned action seeking the appointment of a liquidating trustee pursuant to 6 Del. C. § 18-803 to wind up the affairs of BGN, a Delaware limited liability company with Blue Cal and Givaudan SA ("Givaudan," and together with Blue Cal, the "Members") as its members.

2.  On January 28, 2020, the Court entered the Appointment Order, appointing the Trustee to wind up BGN. The Trustee filed the *Acceptance of Appointment of Liquidating Trustee* [Dkt. No. 48] on February 3, 2020. On October 14, 2020, the Court entered an Order authorizing the Trustee to retain Katten Muchin Rosenman LLP as his legal counsel to assist and advise the Trustee with respect to certain legal issues related to the BGN LLC Agreement, and the assessment of the requirements for the post-dissolution distribution of intellectual property assets, which were the subject of significant dispute between the Members.

3.  The Trustee filed the *Liquidating Trustee's First Interim Summary Report* [Dkt. No. 72] (the "First Status Report") on November 25, 2020, which focused on the Trustee's efforts to gain control over BGN's accounts and cash, and the *Liquidating Trustee's Second Interim Summary Report* [Dkt. No. 81] on June 30, 2021, which described the Trustee's plans to assess certain intellectual property matters related to BGN. On December 6, 2021, the Trustee filed the Liquidating Trustee's Third Interim Summary Report [Dkt. No. 82] (the "Third Status Report"), which described issues pertaining to the LLC Agreement's requirements that the Members execute a license agreement to govern certain intellectual property rights related to BGN upon its dissolution, and the Trustee's preparation of a license agreement (the "Post-Dissolution License Agreement") which, as described below, was shared with each of the Members and their respective counsel in late 2021. Finally, the Trustee filed the *Liquidating*

*Trustee's Fourth Interim Summary Report* [Dkt. No. 84] on April 4, 2022, which described the Members' disagreements and the Trustee's attempts to provide a consensual wind up plan governing the Post-Dissolution License Agreement and the dissolution of BGN related to the division between the Members of certain intellectual property and the rights related thereto (collectively, the "<u>Intellectual Property</u>"). In the Trustee's proposed wind up of BGN, and as discussed in further detail below, the division of the Intellectual Property is set forth in a schedule to the Post-Dissolution License Agreement.

4. During the course of this proceeding, the Trustee engaged in significant efforts to coordinate a resolution of this disagreement between the Members, with respect to: (i) the appropriate Post-Dissolution License Agreement distributing the intellectual property rights; (ii) certain definitions of "Core IP" described in the LLC Agreement; and (iii) the appropriate manner in which to resolve an assertion by Givaudan that Blue Cal had improperly entered into a licensing agreement with BASF SE ("<u>BASF</u>"), for Blue Cal's sole benefit, with respect to intellectual property that was purportedly implicated by the LLC Agreement.

5. In an effort to resolve these matters and move on to an orderly and agreed upon wind up between the Members, the Trustee prepared and facilitated the exchange of drafts of a proposed Post-Dissolution License Agreement to the respective Members, with related schedules designed to resolve the Members' dispute over what constituted the intellectual property of BGN. The Trustee elicited comments from each Member in an effort to move toward a Post-Dissolution License Agreement that is fair and reasonable.

6. The Trustee received comments to the proposed Post-Dissolution License Agreement from each of the Members in January and February 2022, which included comments on the provisions of the Post-Dissolution License Agreement as well as the content of the

US_153868003v5

Schedules thereto. Following the Trustee's receipt and assessment of such comments, and realizing that the Members had reached an impasse and would not agree on the terms of the Trustee's proposed Post-Dissolution License Agreement, the Trustee's counsel met with counsel for each of the Members, and requested that the Members provide the Trustee with a written statement providing the legal bases supporting their respective positions regarding the Post-Dissolution License Agreement, as well as any factual issues that each Member believed the Trustee should consider. The Trustee received submissions regarding the Member's legal and factual positions on February 25, 2022, and his counsel analyzed and assessed the Members' respective legal assertions and factual positions regarding their views of the appropriate, and purportedly required, post-dissolution distribution of the intellectual property assets.

7. Based on the Members' submissions, supplemental materials provided by the Members, his analysis of the LLC Agreement and the Intellectual Property, and the advice and recommendations of his legal counsel, the Trustee proposed to the Members, via counsel, a compromised wind-up procedure on May 27, 2022 in an effort to reach a final resolution between the Members. The Trustee advised the Members that if they failed to agree to the Trustee's proposal, the Trustee would invoke the power and authority granted to him pursuant to the Appointment Order and file this motion with the Court requesting the approval of dissolution terms that the Trustee believes, based on his experience, and informed discretion, to be fair and reasonable based on the facts and law.

8. After an extension of time requested by the Members, on June 9, 2022, Blue Cal advised the Trustee that it would accept and agree to the Trustee's proposed wind up. The Trustee understands that Givaudan did not object to the proposed distribution of the liquid assets of BGN, but it did object to the Trustee's proposed treatment and distribution of the purported

intellectual property assets of BGN, and in particular the Trustee's proposal with respect to the scope of rights in the Post-Dissolution License Agreement. Having the agreement of one of the Members, the Trustee is now moving for approval of its proposed wind up of BGN as set forth below.

A.   **Distribution of BGN's Liquid Assets**

9.   Prior to the appointment of the Trustee, BGN had approximately $469,000 in liquid assets which was deposited into the BGN Trust account in January of 2021. As previously reported in the First Status Report, the Trustee was initially foreclosed from taking control of additional BGN cash which was held at East West Bank but which had been pledged as collateral for non-BGN debt due to certain actions Blue Cal had taken. Such actions were subsequently remediated at the Trustee's request and the balance of available funds in the amount of $10,115,000 were transferred into the BGN Trust account. During the course of this case, the Trustee has continued to make normal course payments including but not limited to BGN's accounting firm, information technology firm, CA State Taxes and Fees, Katten and the Liquidating Trustee. As required under the terms of the Order Appointing the Liquidating Trustee, the Liquidating Trustee has been serving his monthly invoices on counsel to both Members and has received no objections to any of his invoices. As an additional courtesy, the Trustee has been providing a summary of Katten's invoices to counsel to both Members on a monthly basis and has received no objections. The Trustee is in a position to utilize existing cash to satisfy any outside creditors and will maintain an additional reserve for purposes of final administrative wind-down tasks such as tax return preparation. As of July 29, 2022 the Liquidating Trust account has a balance of approximately $9,998,000. Attached as **Exhibit 1** to the De Camara Affidavit is a Cash Flow Statement in regards to the Liquidating Trust as of July

31, 2022. There are some intra-member obligations that remain outstanding (and which are not reflected on the Company's Balance Sheet), but by agreement of the Members, those obligations are being satisfied with respect to the proposed distribution of the liquid assets between the Members, and the credits and debits from each respective Member's distribution as agreed. The proposed distribution of the liquid assets is attached to the De Camara Affidavit as **Exhibit 2.**

B.    **The Distribution of BGN's IP Assets**

10.    The primary difficulty in winding up and dissolving BGN has been with respect to assessing the intangible intellectual property assets of BGN. Under Section 13.03(b)(iii) of the LLC Agreement, certain IP owned by the LLC is to be distributed to Blue Cal subject to a "Post-Termination License Agreement" as described in 13.07(b(ii). Section 13.07(b)(ii)(1) provides that Blue Cal shall grant an exclusive license to Givaudan to use the "Core IP" within the Field. The primary dispute between the Members is regarding the scope of that Post-Dissolution License Agreement, which implicates the scope of "Core IP" (which is specifically defined in the LLC Agreement), which further implicates the meaning of Natural Vanillin (which is not specifically defined in the LLC Agreement).

11.    On a high level, Givaudan's position is that the definition of Core IP is broad, covering any and all IP related to natural vanillin as described in U.S. and European regulations, and that Blue Cal must grant it an exclusive right, even as to Blue Cal, to all such IP. On a high level, Blue Cal's position is that the definition of Core IP is narrow, and implicates only the specific natural vanillin technology that was being developed and contributed by Blue Cal into BGN.

12.    Complicating the issue is that on May 6, 2019, Conagen Inc. ("Conagen"), which is understood to be an affiliate of Blue Cal, entered into a Research Collaboration and License

Agreement ("BASF License") with third party BASF, whereby Conagen agreed to, *inter alia* exclusively license to BASF certain natural vanillin IP in exchange for royalties. Givaudan's position is that the BASF License is a violation of the LLC Agreement and that the natural vanillin IP licensed to BASF should be exclusively licensed to Givaudan in the Post-Dissolution License Agreement. Blue Cal's position is that the BASF License is not a violation of the LLC Agreement, and that the natural vanillin IP implicated in the BASF License is independent of the LLC Agreement and is not subject to the Post-Dissolution License Agreement.

13. As described above, as a result of this dispute, the Members could not agree on a Post-Dissolution License Agreement, which is required under the LLC agreement upon dissolution of the LLC. In order to facilitate and consider the Members' respective legal positions, the Trustee invited written submissions from both Members supporting their respective legal positions. The Members' counsel submitted those position statements on February 25, 2022, and the Trustee's counsel's intellectual property lawyers reviewed the respective positions and further considered numerous other substantive conversations with the parties as well as other materials provided in writing, in order to make an independent assessment – if possible – of whether one party's position was definitively correct as a matter of law.

14. The Trustee's review of the Members' respective position revealed a complicated set of circumstances that were not expressly contemplated by the LLC Agreement, including (1) factual issues surrounding the definition of Core IP in the LLC Agreement, (2) whether, regardless of the definition of Core IP, Conagen entering into the BASF License was a violation of the LLC Agreement; (3) how to assess damages assuming a presumed violation; and (4) practical issues regarding the time, effort, and complications that could emanate from resolving these questions. Ultimately, the Trustee concluded that even if Givaudan was correct, and Blue

Cal had breached the LLC Agreement when Conagen entered into the BASF License, the claim for that breach would likely belong to BGN (and the Trustee). The Trustee determined that litigation would likely be necessary because Blue Cal expressed its intention to vigorously defend any claims against it related to the BASF License. The Trustee further determined that because of the complications mentioned above, such litigation would take time and result in substantial expenditures of legal and other fees to engage in extensive discovery, including third-party discovery (*e.g.* BASF), and to secure expert testimony. Based on the Trustee's counsel's review and analysis of the dispute, there would be a meaningful risk that after all of the time and expense incurred by BGN in connection with its dissolution in pursuing such a claim, it might not be successful, and could obtain no recovery, or a limited recovery.  Further, any recovery by BGN would presumably become an asset of BGN, which would then be split nearly equally between Blue Cal (49%) and Givaudan (51%).

15. Accordingly, as mentioned above, the Trustee made a determination that a compromise proposal was appropriate.

16. As a result, and for the reasons set forth above, the Trustee has exercised the discretion and authority provided to him with respect to the Appointment Order, and has prepared a proposed Post-Dissolution License Agreement as required by Section 13.07(b)(ii) of the LLC Agreement.  The Post-Dissolution License Agreement provides an exclusive license to Givaudan for Core IP as defined therein.  This exclusive license specifically excludes any natural vanillin IP licensed by Conagen to BASF, which it must because natural vanillin IP licensed to BASF cannot also be exclusively licensed to Givaudan.  Further, the Trustee will compromise any claim BGN might have against Blue Cal (if any) in exchange for the agreement reflected in

US_153868003v5

the Post-Dissolution License Agreement that Blue Cal would provide a 50% distribution to Givaudan of any royalties received under the BASF License.

17. The proposed BGN Distribution Agreement (the "<u>Distribution Agreement</u>") is attached to the De Camara Affidavit as **Exhibit 3**, and the proposed Post-Dissolution License Agreement is attached to the De Camara Affidavit as **Exhibit 4**. During the Trustee's attempted negotiation of a compromise and agreed upon wind up between the Members, one Member suggested that the Trustee might not have power and authority to unilaterally determine the dispute regarding the intellectual property because the LLC Agreement includes provisions that such disputes be arbitrated by the Members. Under Delaware law, and applicable jurisprudence addressing this precise issue, it has been determined by the courts that the Trustee does not have to engage in arbitration, and can use its discretion in resolving disputes such as this as the Members' right to arbitration is effectively waived once they have actively litigated over issues related to dissolution. *See*, *e.g.*, *In re Dissolution of Jeffco Mgmt., LLC*, Case No. 2018-0027-PAF, 2021 WL 282634, at *2, n.2 (Del. Ch. Jan. 28, 2021) (noting in dissolution proceeding that a party may waive its right to arbitration by "actively participating in litigation as to an arbitrable claim"); *Dorsey v. Nationwide General Ins. Co.*, Case No. 10101, 1989 WL 102493, at *2 (Del. Ch. Sept. 8, 1989) (discussing waiver of arbitration where parties litigated for two years and obtained discovery in advance of requesting arbitration).

## CONCLUSION

WHEREFORE, the Liquidating Trustee respectfully submits that this Court enter an order (i) approving the Final Report and (ii) granting the Motion and approving the Trustee's proposed wind up of BGN, and dissolving the LLC.

Dated: August 5, 2022

                                                  Respectfully submitted,

                                                  */s/David A. Crichlow*
                                                  KATTEN MUCHIN ROSENMAN LLP
                                                  David A. Crichlow
                                                  50 Rockefeller Plaza
                                                  New York, NY 10020
                                                  Telephone: (212) 940-8800
                                                  Facsimile: (212) 940-8876
                                                  Email: david.crichlow@katten.com

                                                  *Counsel for the Liquidating Trustee*

## Certificate of Service

    I hereby certify that on August 5, 2022, I electronically filed the foregoing *Liquidating Trustee's Final Report and Motion for Approval of the Trustee's Proposed Wind Up and Dissolution of BGN Tech LLC* with the Clerk of the United States District Court, Southern District of New York using the CM/ECF system, which would then electronically notify all CM/ECF participants on this case.

                                                                                                       */s/ David Crichlow*