**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PHYTO TECH CORP. d/b/a BLUE CALIFORNIA,

    Plaintiff,

v.

GIVAUDAN SA,

    Defendant

**Civil Action No. 19-cv-09033-JGK**

---

### GIVAUDAN SA'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE LIQUIDATING TRUSTEE'S FINAL REPORT AND MOTION FOR APPROVAL OF THE TRUSTEE'S PROPOSED WIND-UP AND DISSOLUTION OF BGN TECH, LLC

Christopher J. Belter
Ryan G. Pitman
GOLDBERG SEGALLA LLP
711 3rd Avenue, Suite 1900
New York, New York 10017-4013
Phone: 646.292.8700
Fax:  646.292.8701
cbelter@goldbergsegalla.com
rpitman@goldbergsegalla.com

*Attorneys for Defendant Givaudan SA*

## **TABLE OF CONTENTS**

I.   Introduction ................................................................................................................... 1

II.  The Trustee Has No Authority To Demand The Members Agree To A PTLA. ..................... 2

III. The Trustee's Proposed PTLA Violates the LLC Agreement. .............................................. 3

IV.  The Existence of the BASF Agreement Does Not Permit the Trustee to Propose a PTLA That Directly Contradicts the LLC Agreement. ................................................................................. 4

V.   The Proposed PTLA Fails To Resolve the Members' Disputes and is Unworkable. .............. 5

VI.  Conclusion .................................................................................................................... 9

**I.     Introduction**

The Court should deny the Trustee's Motion (the "Motion") (Dkt. 85) because the Trustee abused his discretion by exceeding the authority granted to BGN Tech, LLC (the "LLC") by the LLC Agreement (Dkt. 17, filed under seal), and by proposing a wind-up to the LLC that violates that agreement. Givaudan's objections to the Motion made this plain, clearly demonstrating the Trustee's abuse of discretion. But rather than explain how the Motion complies with the LLC Agreement, the Trustee provided only arguments about the legal standard of abuse of discretion. The facts laid out in Givaudan's objections, unanswered by either the Trustee or Blue Cal, demonstrate that the legal standard is met. The Trustee has abused his discretion, and therefore the Motion should be denied.

The Trustee's powers are limited by the LLC Agreement, which requires that specific IP only be distributed when Blue Cal and Givaudan (collectively, the "Members") enter into a PTLA[1]. The LLC is not a party to the PTLA, nor does the LLC Agreement contemplate *any role* for the LLC in negotiating a PTLA. Thus, the Trustee, standing in the LLC's shoes, has no authority to demand that Givaudan and Blue Cal enter into a PTLA, and any attempt to do so is an abuse of his discretion. Even if the Trustee had the authority to force the Members to agree to a PTLA, the Trustee abused his discretion by proposing a PTLA that violates the LLC Agreement.

Further, even if the Trustee were empowered to propose a PTLA that violates the LLC Agreement, the Trustee has not provided adequate justification to do so. Even if the Trustee were justified in requiring the Members to enter into a PTLA that violates the LLC Agreement, the PTLA proposed by the Trustee would still be an abuse of discretion because it: 1) fails to provide

---

[1] All capitalized terms and acronyms used herein have the same meaning as are used in the LLC Agreement (Dkt. 16, Ex. 1), and in Givaudan's Objections (Dkt. 87).

1

Givaudan notice of the scope of its license, (2) fails to resolve the alleged conflict with the BASF Agreement, (3) potentially leaves Givaudan without the freedom to operate its business, and (4) purports to settle legal claims that cannot belong to the LLC. For these reasons, the Trustee has abused his discretion. Givaudan respectfully requests that the Court deny the Motion (Dkt. 85), and instruct the Trustee to remove the PTLA, or at minimum, order that it include the license terms expressly provided in the LLC Agreement.

## II.     The Trustee Has No Authority To Demand The Members Agree To A PTLA.

A foundational problem with Trustee's proposed PTLA is that he has no authority to require the Members to enter into a PTLA – either under the LLC Agreement or the Appointment Order (Dkt. 44). While the Trustee has the authority to resolve disputes between the Members regarding the corporate actions of the LLC, that authority does not provide the Trustee free-ranging authority to settle disputes between the Members *to which the LLC is not a party*.

The LLC Agreement is clear that the LLC is not a party to the PTLA. (Dkt. 85-1, Ex. 4, hereinafter "PTLA"). That agreement obligates Givaudan and Blue Cal to enter into a PTLA and does not contemplate *any role at all* for the LLC in the negotiation of the PTLA. The entire procedure for drafting and entering into a PTLA is provided in Section 13.07(b)(ii)(1), which states:

> *Blue Cal and Givaudan* shall enter into a new agreement [the PTLA] pursuant to which, among other things: Blue Cal shall grant to Givaudan a perpetual, worldwide, transferable, royalty-free, sublicensable, exclusive (even as to Blue Cal) license to use the Core IP within the Field . . .

LLC Agreement, § 13.07(b)(ii)(1) (emphasis added). The LLC is not mentioned. Indeed, this is why the LLC *is not a named party in the PTLA*. PTLA, at 1. The only reason the PTLA is relevant to the Trustee's wind-up is that the Blue Cal Contributed IP "shall revert to Blue Cal, subject to Givaudan and Blue Cal entering into the license described in Section 13.07(b)(ii)." LLC

2

Agreement, § 13.03(b)(iii). Put another way, the Trustee may not distribute the Blue Cal Contributed IP to Blue Cal until the Members enter into a PTLA. But that limitation on the distribution of Blue Cal Contributed IP does not empower the LLC, or the Trustee standing in the LLC's shoes, to force the Members to agree to a PTLA, much less in the form proposed by the Trustee.

The Trustee cannot avoid this problem by relying on his authority under Section 13.02 of the LLC Agreement to distribute or encumber LLC assets, as Blue Cal suggests (Dkt. 89, at ¶ 1). Because the LLC is not a party to the PTLA, requiring agreement to it on the Trustee's terms cannot fall within the scope of his authority to "sell, assign, encumber, or otherwise dispose of" the assets of the LLC. To the extent that IP assets are sold, assigned, or encumbered by the PTLA, it is *Blue Cal's* assets that are so encumbered. The PTLA is a license *from* Blue Cal *to* Givaudan. Further, the scope of that license does not depend solely on the distribution of assets from the LLC but extends to IP assets possessed by Blue Cal and its affiliates. LLC Agreement (definition of "Core IP"). Because the terms of the PTLA do not constitute a sale or encumbrance of an asset of the LLC, the Trustee has no authority to propose a PTLA.

Further, the Trustee has not asked for any relief that would cause the PTLA to take effect for the same reasons described above. The only relief requested in the Motion is for the Court to "approve" the PTLA. (Dkt. 85-2). But the LLC is not a signatory to the PTLA, nor even a named party. Approval of the PTLA by the Trustee, and thus the LLC in whose shoes he stands, accomplishes nothing. The Trustee has thus abused his discretion by asking for relief that the Trustee is not entitled to or in the alternative, fails to accomplish any purpose for the LLC.

**III.   The Trustee's Proposed PTLA Violates the LLC Agreement.**

Even if the Trustee had the power to propose a PTLA, the proposed PTLA violates the LLC Agreement because it does not contain the exclusive license of Core IP from Blue Cal to

3

Givaudan. The LLC Agreement provides that "Blue Cal *shall grant* to Givaudan" an exclusive license to the Core IP. "Core IP" is a defined term that means "any intellectual property owned by Blue Cal or its Affiliates after the dissolution of the Company that is related to Natural Vanillin, Cis-3-Hexenol and Juno, including the Blue Cal Contributed IP." LLC Agreement, at 5. The definition of Core IP is broad by design, reflecting Givaudan investment of $20 million and its own IP to the LLC to fund research and development. Givaudan is entitled to the license it negotiated and paid for, and the Trustee has no authority to deviate from the LLC Agreement to deprive Givaudan of that license. Simply put, any license grant language from Blue Cal to Givaudan in a PTLA that departs from the bargained-for terms of the LLC Agreement violates that agreement. The Trustee's attempt to do so is thus an abuse of his discretion.

**IV.    The Existence of the BASF Agreement Does Not Permit the Trustee to Propose a PTLA That Directly Contradicts the LLC Agreement.**

Even if the Trustee were permitted to depart from the plain language of the LLC Agreement, there is no adequate justification to do so. The Trustee justifies his departure from the LLC Agreement by claiming that Blue Cal could not grant an exclusive license to the Core IP because Conagen, an affiliate of Blue Cal, had already given an exclusive license to technology related to vanillin to BASF and thus Blue Cal could not grant *any license at all* to that technology to Givaudan. (Dkt. 88, at ¶ 10). But the Trustee is incorrect and gets the timing and priority of the BASF Agreement and Givaudan's right to license the Core IP reversed.  The LLC Agreement was effective February 21, 2014. The BASF Agreement (*see* Affirmation of Ryan G. Pitman, Exs. A and B), was not entered into until May of 2019, *five years later*. Thus, the problem is not that Blue Cal cannot grant the license it agreed to grant Givaudan, but that Blue Cal's affiliate Conagen could not in 2019 grant BASF rights because Blue Cal already agreed that those rights were property of the LLC when Blue Cal entered into the LLC Agreement in 2014. To the extent a legal

4

claim exists arising from the BASF Agreement, it is BASF's claim to assert against Conagen for attempting to grant rights it could not grant.

The Trustee also appears to believe that the BASF Agreement permits him to propose a PTLA that directly contradicts the LLC Agreement because any claim arising out of the BASF Agreement allegedly would belong to the LLC, which he has authority to resolve. Dkt. 85, at ¶ 14. But this is also incorrect. "Core IP" does not refer to the IP of the LLC, and thus any claim by the LLC against Conagen or BASF is irrelevant to the PTLA. Instead, Core IP is defined as IP "owned by Blue Cal or its Affiliates after the dissolution of [the LLC]." Whether Core IP was ever the property of the LLC is irrelevant to the license granted under the PTLA.

## V. The Proposed PTLA Fails To Resolve the Members' Disputes and is Unworkable.

Even if the Trustee were empowered to propose a PTLA that violates the LLC Agreement or to require the Members to agree to it, the proposed PTLA is unworkable. Givaudan desired, and Blue Cal agreed to grant Givaudan an exclusive license to the Core IP *without any carve-outs*. If the Trustee is correct that some allowance or compromise is necessary given the BASF Agreement, such a compromise must – at a bare minimum – provide Givaudan with the freedom to use the Core IP, including by making, selling, offering for sale, and all other commercial activities associated with their vanillin business. If Blue Cal cannot grant even a non-exclusive license of sufficient breadth to allow Givaudan that freedom to operate, it *strongly* suggests that at least BASF is a necessary and indispensable party to resolving the dispute over the scope of Core IP, including, for example, providing mirror-image carve-outs from both the BASF Agreement and the PTLA such that any license to overlapping IP is non-exclusive.

But under the Trustee's proposed PTLA, Givaudan would not have any licensed rights *at all* to "any IP specifically licensed in the BASF Agreement that would otherwise fall within the definition of Core IP in this Agreement," instead receiving merely a share of a theoretical income

5

stream from BASF in "full resolution" of the Members' dispute regarding the BASF Agreement. (PTLA, at § 10.01(a-b)). This puts Givaudan in an untenable position because the proposed PTLA (1) fails to provide Givaudan notice of what IP rights it does or does not have, (2) fails to resolve the conflict between Core IP and the rights allegedly licensed to BASF, (3) potentially leaves Givaudan without the freedom to operate its business, and (4) purports to settle Givaudan's claims against Blue Cal which cannot belong to the LLC.

First, the proposed PTLA fails to provide notice of what IP rights it will have under the agreement because Givaudan *cannot know the scope of BASF's license grant*. The PTLA carves out "any IP specifically licensed in the BASF Agreement that would otherwise fall within the definition of Core IP," thus linking the scope of the carve-out to the scope of the license grant to BASF.  Thus, Givaudan cannot possibly know—or even reasonably speculate—on what actual rights have been carved out of the PTLA.

Second, the Trustee's proposed PTLA does not resolve the putative conflict between the Core IP and the rights allegedly licensed to BASF that the Trustee proposes to address by removing from the definition of Core IP, "any IP *specifically licensed* in the BASF Agreement." (emphasis

6

added). If "specifically licensed" means any IP licensed to BASF under the terms of the BASF Agreement, Givaudan cannot possibly know what IP is actually licensed, as discussed above. Alternatively, the Trustee's exclusion could refer only to that IP *specifically identified* in the BASF Agreement, ███████████████████████████████████████████ ███ But under such an interpretation, a subset of IP rights could be both Core IP that is not "specifically identified" in the BASF Agreement ██████████████████████ ████████████████████████████████████████ Thus, under either interpretation of the Trustee's proposal, the carve-out fails to resolve any conflict between the definition of Core IP and the Licensed Technology under the BASF Agreement.

Third, a carve-out of its license to Core IP potentially leaves Givaudan without freedom to operate its business, because Givaudan uses the Core IP in its business. That is why Givaudan negotiated for the Core IP license at the time it entered into the LLC Agreement. Under the proposed PTLA with a carve-out, Givaudan would not receive even a non-exclusive license to the carved-out portion of the Core IP.

Fourth, the proposed PTLA could be interpreted as a release and settlement of claims that belong to Givaudan and that the Trustee has no right to settle on Givaudan's behalf. While the LLC may have a claim against Conagen and/or Blue Cal under the LLC Agreement, any such claim is separate and apart from Givaudan's claim under Section 13.07(b)(ii) against Blue Cal for failure to grant Givaudan an exclusive license to the Core IP. The Trustee has not – and cannot – point to any authority granted to him that would empower him to settle a claim between Givaudan and Blue Cal to which the LLC is not a party. The Trustee is not a special master for that purpose.

Nonetheless, the proposed PTLA contains language that a reviewing court could construe as a release and waiver of such claims. Section 10.01 of the proposed PTLA states:

7

> Conagen, Inc. and BASF SE entered into an agreement as of May 2019 ("BASF Agreement"), and there is a dispute between the parties hereto with respect to whether the grant of rights under that agreement is in conflict with the BGN Tech LLC Agreement. . . . ***In full resolution of that dispute, the Parties hereby agree*** . . .[to the carve-out from Core IP]"

(emphasis added). The emphasized sentence could be construed as a blanket waiver and release of all claims arising from Givaudan's and Blue Cal's dispute regarding the BASF Agreement. This could include Givaudan's claims against Blue Cal for failing to perform under the LLC Agreement, a dispute that the Trustee is not empowered to resolve. However, the breadth of the phrase could be construed as a release of Givaudan's potential claims against BASF and/or Conagen, neither of which are parties here. Whatever the Trustee's authority, it cannot extend to settling claims to which the LLC is not a party, including claims among parties not even present in this litigation. To the extent that the Trustee believes he is empowered to attempt to force Givaudan to release claims *to which the LLC is not a party*, the Trustee has abused his discretion.

## VI. Conclusion

For the preceding reasons, Givaudan respectfully requests that the Court deny the Motion to the extent it requires the Members to enter into the Trustee's proposed PTLA.

Dated: August 22, 2022

                GOLDBERG SEGALLA LLP

                By:   s/ Ryan G. Pitman
                      Christopher J. Belter
                      Ryan G. Pitman
                      665 Main Street
                      Buffalo, New York 14203-1425
                      Phone: 716.566.5400
                      Fax:    716.566.5401
                      cbelter@goldbergsegalla.com
                      rpitman@goldbergsegalla.com

                      *Attorneys for Defendant Givaudan SA*

**CERTIFICATE OF COMPLIANCE**

I, Ryan G. Pitman, an attorney admitted to practice in the State of New York and before this Court, certify in accordance with the Court's Individual Practice 2.D. that (1) the number of words in the foregoing memorandum, exclusive of the cover page, certification of compliance, table of contents, and table of authorities, is 2,777, as determined by the word-count function of Microsoft Word; and (2) that the foregoing memorandum complies with the formatting rules of the Court's Individual Practices.



                s/ Ryan G. Pitman

                   Ryan G. Pitman